# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**KIRBY WARD**                                                                                                **PLAINTIFF**

**V.**                                **CASE NO. 4:20CV347DPM**

**LUCAS EMBERTON AND**
**GENE EARNHART**                                                                                        **DEFENDANTS**

## DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS (DOC. 37)

COME now, Defendants, Lucas Emberton and Gene Lockhart, in their individual capacities, by and through counsel, Sara Monaghan, and for their Response to Plaintiff's Statement of Undisputed Material Facts (Doc. 37), state:

1. On May 15, 2018, the plaintiff was driving his vehicle on the roads of Arkansas. See Doc. 30, Exhibits 2 and 3, RFA #1.

   RESPONSE: Admit.

2. On May 15, 2018, members of the Greenbrier Police Department initiated a traffic stop of the plaintiff's vehicle. Id at RFA #2.

   RESPONSE: Admit.

3. Upon initiating the stop of the plaintiff's vehicle, defendant Lucas Emberton got out of his police vehicle and approached the plaintiff's stationary vehicle from the driver's side of the plaintiff's vehicle and Earnhart approached the vehicle from the passenger's side. Id at RFA #3.

   RESPONSE: Admit.

4.      When Lucas Emberton and Gene Earnhart arrived on foot to the driver's side and passenger's side of the plaintiff's vehicle respectively, the plaintiff was sitting in the front seat directly behind the steering wheel. Id at RFA 4.

RESPONSE: Admit.

5.      When Lucas Emberton and Gene Earnhart arrived on foot to the driver's side and passenger's side of the plaintiff's vehicle respectively, they both saw a firearm resting on the dashboard inside the plaintiff's vehicle on the driver's side. Id. at RFA 5.

RESPONSE: Admit.

6.      After Lucas Emberton and Gene Earnhart arrived on foot to the driver's side and passenger's side of the plaintiff's vehicle respectively, Emberton stood next to the driver's side window, and he began talking with the plaintiff through the open window on the driver's side. Id at RFA 6.

RESPONSE: Admit.

7.      As Lucas Emberton stood next to the driver's side window of the plaintiff's vehicle, he asked the plaintiff to show him his driver's license. RFA 7.

RESPONSE: Admit.

8.      As plaintiff searched for his driver's license in compliance with Lucas Emberton's request to see it, Emberton reached inside the vehicle and removed the firearm from the dashboard. Id at RFA 8.

RESPONSE: Admit.

9.      When Lucas Emberton removed the firearm from atop the dashboard, he examined the same gun and found it to be unloaded. Id at RFA 9.

RESPONSE: Admit.

10. After Lucas Emberton examined the same gun and found it to be unloaded, he asked the plaintiff to hand him the clip for the gun. Id at RFA 10.

RESPONSE: Admit.

11. The plaintiff complied with Lucas Emberton's request to hand him the magazine for the same gun. Id at RFA 11.

RESPONSE: Admit.

12. Lucas Emberton took possession of the gun magazine. Id at RFA 12.

RESPONSE: Admit.

13. After Lucas Emberton took possession of the same gun clip, he asked the plaintiff to show him vehicle registration and proof of insurance, and plaintiff reached into the glove compartment of his vehicle and began to remove papers. Id at RFA 13.

RESPONSE: Admit.

14. As plaintiff was handling the papers, he pulled out of the glove compartment, Lucas Emberton asked the plaintiff if he had another gun magazine in his pocket. Id at RFA 14.

RESPONSE: Admit.

15. When Lucas Emberton had asked the plaintiff whether he had another gun magazine in his pocket, the plaintiff answered in the affirmative, whereupon Emberton asked the plaintiff to give him the magazine that was in Kirby Ward's pocket. Id at RFA 15.

RESPONSE: Admit.

16. The plaintiff handed Lucas Emberton the gun magazine that had been in his pocket and Emberton took possession of it. Id at RFA 16.

RESPONSE: Admit.

17. After Lucas Emberton took possession of the gun clip that the plaintiff had had in his pocket, Emberton asked the plaintiff if he had any other weapons, and his response was that he did not, except for a pocketknife. Id at RFA 17.

RESPONSE: Admit.

18. The moment after the plaintiff told Lucas Emberton he had a pocketknife in his immediate possession, Emberton did not ask the plaintiff to hand Emberton the pocketknife. Id at RFA 18.

RESPONSE: Admit.

19. As the plaintiff was searching for proof of car registration, Lucas Emberton asked him if he had anything else in his pocket, and he said he had medicine. Id at RFA 19.

RESPONSE: Admit.

20. After the plaintiff informed Lucas Emberton that he had medicine in his pocket, Emberton asked the plaintiff to step out of plaintiff's vehicle. Id at RFA 20.

RESPONSE: Admit.

21. The plaintiff complied with Lucas Emberton's to step outside of his vehicle, and he exited the vehicle through the front door, driver's side. Id at RFA 21.

RESPONSE: Admit.

22. After the plaintiff stepped out of the vehicle, Lucas Emberton told him that he was going to check the plaintiff for weapons. Id at RFA 22.

RESPONSE: Admit.

23. Upon Lucas Emberton stating his intent to check the plaintiff for weapons, the plaintiff told Emberton he had a pocketknife and his gun holster. Id at RFA 23.

RESPONSE: Admit.

24. Lucas Emberton took possession of the plaintiff's gun holster. Id at RFA 24.

RESPONSE: Admit.

25. After Lucas Emberton took possession of the plaintiff's gun holster, Emberton asked the plaintiff to step away from his vehicle and he did so. Id at RFA 25.

RESPONSE: Admit.

26. After the plaintiff stepped away from his vehicle, he asked Lucas Emberton what the problem was. Id at RFA 26.

RESPONSE: Admit.

27. Lucas Emberton responded to the plaintiff's question of what the problem was by telling the plaintiff that Emberton pulled him over for expired tags and as Emberton was approaching his vehicle, the plaintiff was "unloading and racking a pistol." Id at RFA 27.

RESPONSE: Admit.

28. In response to Lucas Emberton's statement that the plaintiff was unloading and racking a pistol, the plaintiff said, "I just took the shell out of it for you guys." Id at RFA 28.

RESPONSE: Admit.

29. Lucas Emberton told the plaintiff that he had to have a conceal and carry permit. Lucas Emberton said: "You cannot conceal carry a weapon without a conceal carry license." Id at RFA 29.

RESPONSE: Admit.

30. After Lucas Emberton told the plaintiff that he must have a conceal carry license, defendant Earnhart, who was also at the scene, stated that to be carrying a weapon "you have to be on a journey within 25 miles from home." Id at RFA 30.

RESPONSE: Admit.

31. In response to defendant Earnhart's aforementioned statement, the plaintiff said "Yes, Sir. That's where I was." Id at RFA 31.

RESPONSE: Admit.

32. After the plaintiff stated that he was on the kind of journey that defendant Earnhart was talking about, defendant Earnhart asked the plaintiff where he had been. Id at RFA 32.

RESPONSE: Admit.

33. The plaintiff stated that he had just gotten back from a job in Clinton, other side of Clinton, in Botkinburg, Arkansas. Id at RFA 33. See Doc. 25, Defense Exhibit 3, Video at 6:59.

RESPONSE: Admit.

34. In response to the plaintiff stating he had been at a job in Clinton, defendant Earnhart stated that that wasn't a journey, and that a journey is a trip, that "a journey is going to another state." See Doc. 30, Exhibits 2 and 3, RFA # 34.

RESPONSE: Admit.

35. After defendant Earnhart described what it meant to be on a journey, Lucas Emberton stated: "The issue right now is I pulled you over for expired tags, and as I'm approaching the vehicle, you're racking a gun. Okay? Plain and simple, you know. I could have been a lot more aggressive had I not understood what you were doing." Id at RFA #35.

RESPONSE: Admit.

36. In response to Emberton's statement as quoted in the previous paragraph the plaintiff said that he was racking the gun for the officer's safety and that getting the gun out of the way and up on the dash was what he had been told to do by Conway P.D. Id at RFA #36.

RESPONSE: Admit.

37. After the plaintiff stated he had been acting for the officer's safety in accordance with what the plaintiff believed Conway P.D. had taught him, defendant Earnhart stated: "When I seen you racking it I could draw down and shot you." Id at RFA #37.

RESPONSE: Admit.

38. After defendant Earnhart made the statement as just quoted, Lucas Emberton told the plaintiff to never rack a gun when a police officer is nearby, and then Emberton walked to the police vehicle and opened the driver's side front door to get on the radio with police dispatch, while the plaintiff and defendant Gene Earnhart were having conversation outside the vehicle. Id at RFA #38.

RESPONSE: Admit.

39. After Lucas Emberton had gone inside the police vehicle, he came out and gave the plaintiff a citation with a court date for failing to register a vehicle and carrying a weapon. Id at RFA #39.

RESPONSE: Admit.

40. After the plaintiff had signed the acknowledgment for the citation, Lucas Emberton made the statement "I understand that, but if you're not smart enough not to rack a gun in front of a police officer, you're not smart enough to carry it." Id at RFA #40.

RESPONSE: Admit.

41. Lucas Emberton retained possession of the plaintiff's firearm and told him "I'm going to take your gun until the judge releases it to you on your court date." Id at RFA #41.

RESPONSE: Admit.

42. After issuing the plaintiff the citation and telling him he was free to go, defendant

Earnhart said "It's like I just told you, if I hadn't seen you lay it on the dash and move your hand, you'd probably have been shot through the side glass." Id at RFA #42.

RESPONSE: Admit.

43. Sometime after defendant Earnhart made the statement quoted in the preceding for admission, Lucas Emberton stated "For right now, from what I've seen you do today, you don't need to be carrying it." Id at RFA #43.

RESPONSE: Admit.

44. The bodycam video that the plaintiff provided to defendants in discovery in this case, which depicts the investigative stop of May 15, 2018, to which this for admissions pertains, is a fair and accurate video and audio representation of the events that the video purports to depict. Id at RFA #44.

RESPONSE: Admit.

45. Racking a firearm that has no magazine, however, is unambiguous conduct, and would unambiguously show that the firearm is unloaded. See Doc. 30, Exhibit 1, Affidavit of Paul Calvert.

RESPONSE: The fact stated in Paragraph forty-five (45) of Plaintiff's SUMF is not properly supported by evidence from the record as required by Rule 56 of the Federal Rules of Civil Procedure, and therefore should not be considered an undisputed fact for summary judgment purposes. In addition, the Affidavit of Paul Calvert is inadmissible at trial under the Federal Rules of Evidence as it contains nothing but hearsay and inadmissible opinion testimony, and therefore, Defendants object to the Plaintiff's offer of said his affidavit as any basis for summary judgment in this case.

46. The following statements were made by the defendants: "There is no excuse whatsoever even with a concealed carry [license] to have a weapon loaded and an extra clip in your pocket." (See Doc. 25, Defense Exhibit 3, Video at 11 minutes to 13 minutes.) "You can't carry a gun concealed without a concealed carry permit…That's black and white." (Id, at 14 minutes and 34 seconds.)

RESPONSE: Admit.

47. Emberton stated that there was "no way" Kirby Ward could get his gun back prior to the court date where a judge would decide whether or not to give it back. See Doc. 25, Defense Exhibit 3, Video at 18:24.

RESPONSE: Admit.

48. "Go get your permit, that's all you've got to do." Earnhart, in Defense Exhibit Video, at 19:09.

RESPONSE: Admit.

49. Emberton received a criminal background check from dispatch on Kirby Ward prior to permanently confiscating Kirby's firearm and learned that Kirby Ward had 0 points, had a valid driver's license, and had no violent crimes or felonies. See Doc 25, Defense Exhibit 3, Emberton Video at 10:20.

RESPONSE: Admit.

50. Emberton and Earnhart discuss Ward's criminal history and note that after running his criminal record that he is not a felon. See Doc. 25, Exhibit 3 at the very end.

RESPONSE: Admit.

51. Plaintiff was tried for the charge of carrying a weapon. At the trial the public defender who represented the plaintiff was questioning defendant Emberton about whether there

was any evidence to support a claim that the plaintiff was carrying with the intent to unlawfully use the firearm as a weapon against his person. Emberton replied something to the effect of, "There's a weapon. That's enough for me." See Doc. 30, Exhibit 4, Deposition of Paul Calvert, pg. 9, lines 1-7.

 RESPONSE: The fact stated in Paragraph fifty-one (51) of Plaintiff's SUMF is not properly supported by evidence from the record as required by Rule 56 of the Federal Rules of Civil Procedure, and therefore should not be considered an undisputed fact for summary judgment purposes. Specifically, Paul Calvert's testimony regarding testimony from the district court trial in this matter is hearsay, and Defendants object to the Plaintiff's offer of his affidavit as any basis for summary judgment in this case.

 52. At the same criminal trial for the carrying a weapon charge, when Emberton was asked what the plaintiff's unlawful purpose was, Emberton at first stated that "he did not know," then on re-direct, Emberton was asked if he thought there was "lawful purpose to use the gun against [Emberton]," and Emberton Responded "yes" and then later Emberton said "No, I really don't know what his purpose was." See Doc. 30, Exhibit 5, Deposition of Josh Waters, pg. 5, lines 8 to 24.

 RESPONSE: The fact stated in Paragraph fifty-two (52) of Plaintiff's SUMF is not properly supported by evidence from the record as required by Rule 56 of the Federal Rules of Civil Procedure, and therefore should not be considered an undisputed fact for summary judgment purposes. Specifically, Josh Water's testimony regarding testimony from the district court trial in this matter is hearsay, and Defendants object to the Plaintiff's offer of his testimony as any basis for summary judgment in this case.

53. Earnhart testified at plaintiff Kirby Ward's same criminal trial that he did not feel that "Mr. Ward was smart enough to own a gun and he wanted…him to get his permit, and thought that [Ward] needed a concealed carry license.". Id.

RESPONSE: Admit.

54. When plaintiff Kirby Ward was pulled over, he remarked that he was late to meet his children at his house who were about to be dropped off by the school bus. See Doc 25, Exhibit 3, Emberton Video at 57 seconds.

RESPONSE: Admit.

55. Botkinburg is outside of Faulkner County, where Ward resides, and is approximately 47 miles from where Kirby Ward lives. See Exhibit 1, Affidavit of Paul Calvert.

RESPONSE: The fact stated in Paragraph fifty-five (55) of Plaintiff's SUMF is not properly supported by evidence from the record as required by Rule 56 of the Federal Rules of Civil Procedure, and therefore should not be considered an undisputed fact for summary judgment purposes. In addition, the Affidavit of Paul Calvert is inadmissible at trial under the Federal Rules of Evidence as it contains nothing but hearsay and inadmissible opinion testimony, and therefore, Defendants object to the Plaintiff's offer of said his affidavit as any basis for summary judgment in this case.

56. Kirby Ward lives in Holland, Arkansas. See Doc. 25, Exhibit 1, Deposition of Kirby Ward, pg. 6, lines 9-10.

RESPONSE: Admit.

56. The following is a statement regarding the policy of the City of Greenbrier: "My office and the City of Greenbrier recognize and respect the 2013 changes to this statute which generally render the mere possession of a weapon on one's person or in their vehicle to be lawful...This

continued to be the standing policy of the City of Greenbrier, and my office wishes to make it clear that at no time have we never believed that the mere possession of a handgun in a person's vehicle or their person violates 5-73-120, as long as the citizen does not display an unlawful intent." See Exhibit 7, Police Report and Letter from City Attorney Dustin Chapman.

RESPONSE: The alleged "fact" stated in Paragraph fifty-six (56) of Plaintiff's Complaint is a conclusion of law, and therefore should not be considered an undisputed fact for summary judgment purposes.

Respectfully submitted,

Sara Monaghan
Ark. Bar No. 2005276
Attorney for Defendants
P.O. Box 38
North Little Rock, AR 72115
TELEPHONE: 501-978-6122
FACSIMILE: 501-537-7262
EMAIL: smonaghan@arml.org