IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

KIRBY WARD                                                                PLAINTIFF

v.                              No. 4:20-cv-347-DPM

LUCAS EMBERTON, in his individual
capacity, and GENE EARNHART, in his
individual capacity                                                       DEFENDANTS

MEMORANDUM OPINION and ORDER

1.    On a May afternoon in 2018, Officer Lucas Emberton and Chief Gene Earnhart, both of the Greenbrier Police Department, pulled over Kirby Ward for having expired tags. Ward was on the way from a roofing job in the next county over to pick up his children from school. After parking his SUV, Ward removed a Glock 19 pistol from a concealed carry holster in his waistband, removed the magazine, racked the pistol to eject the bullet from the chamber, and put his Glock on his dash. Officer Emberton and Chief Earnhart saw Ward remove the magazine and rack the pistol as they approached. Ward was cited for driving with expired tags and for carrying a weapon in violation of Arkansas Code Annotated § 5-73-120, which makes it a crime to carry a gun in certain circumstances. Officer Emberton confiscated the Glock and told Ward it would not be returned until a judge released it to him after his trial. Approximately three months later, Ward was found not

guilty on the weapons charge. His pistol was returned then. The frame was damaged. In the meantime, Ward had bought another pistol for protection on his travels.

2. Ward filed suit under 28 U.S.C. § 1983. Both sides have moved for summary judgment. Most of the facts are undisputed. The encounter was captured on Officer Emberton's body camera. Where there is a genuine dispute of a material fact, the Court views the record in the light most favorable to the non-movant. *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019). The Court will not, however, accept any party's version of a fact where it is "blatantly contradicted by the record" — the body camera footage — such that no reasonable juror could accept the party's contrary version. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

3. **Fourth Amendment Claim Against Officer Emberton.** Ward's Fourth Amendment seizure claim is the core of this case. There's no dispute that his pistol was seized. The question is whether the seizure was reasonable. *Clark v. Clark*, 926 F.3d 972, 977 (8th Cir. 2019).

"The warrantless seizure of property is per se unreasonable unless it falls within a well-defined exception to the warrant requirement." *Robbins v. City of Des Moines*, 984 F.3d 673, 680 (8th Cir. 2021). Officer Emberton and Chief Earnhart identify two exceptions

that they argue apply to their encounter with Ward: safety and plain view.

A police officer may temporarily seize a gun if a reasonably prudent person would believe, based on specific and articulable facts, that the gun poses an immediate threat to the officer's safety or public safety. *United States v. Lewis*, 864 F.3d 937, 946 (8th Cir. 2017). That didn't happen here. First, Ward's Glock wasn't temporarily seized. It was confiscated and not returned for months. Second, Officer Emberton and Chief Earnhart knew that the pistol was unloaded. They saw Ward remove the magazine and rack it, which concerned them. The parties squabble in their motion papers about what it means to rack a gun. But the video is clear. Thirty seconds in, Chief Earnhart asked Ward why he unloaded the pistol while they were approaching the vehicle. Doc. 25-3 at 00.30-00.42. Officer Emberton then verified that it was unloaded. Doc. 25-3 at 00.55-1:18. The safety exception does not justify the confiscation of this pistol. *Lewis*, 864 F.3d at 944-47.

Neither does plain view. This exception permits a law enforcement officer to seize property without a warrant so long as he has a lawful right of access to the property and it's "incriminating character is immediately apparent." *Lewis*, 864 F.3d at 943. "An item's incriminatory nature is immediately apparent if the officer at that moment had probable cause to associate the property with criminal activity . . .." *Lewis*, 864 F.3d at 944 (quotations omitted). Here, the

standard is arguable probable cause, which exists even if the officer made a legal or factual mistake so long as the mistake was objectively reasonable. *Robbins*, 984 F.3d at 680.

The fact that the seized property was a gun doesn't mean the plain view exception automatically applies. *Lewis*, 864 F.3d at 943. It isn't illegal for most people to possess a gun. Just the opposite: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II; *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022). Ward wasn't a felon, an incompetent person, or a child. Officer Emberton confirmed that Ward had no felony record before confiscating the gun.

Officer Emberton argues that he had arguable probable cause to believe that Ward had violated Ark. Code Ann. § 5-73-120.* In May

---

* (a) A person commits the offense of carrying a weapon if he or she possesses a handgun, knife, or club on or about his or her person, in a vehicle occupied by him or her, or otherwise readily available for use with a purpose to attempt to unlawfully employ the handgun, knife, or club as a weapon against a person.

(b) As used in this section:

> (1) "Club" means any instrument that is specially designed, made, or adapted for the purpose of inflicting serious physical injury or death by striking, including a blackjack, billie, and sap;

(2) "Handgun" means any firearm with a barrel length of less than twelve inches (12") that is designed, made, or adapted to be fired with one (1) hand;

(3) "Journey" means travel beyond the county in which a person lives; and

(4) "Knife" means any bladed hand instrument three inches (3") or longer that is capable of inflicting serious physical injury or death by cutting or stabbing, including a dirk, a sword or spear in a cane, a razor, an ice pick, a throwing star, a switchblade, and a butterfly knife.

(c) It is permissible to carry a weapon under this section if at the time of the act of carrying the weapon:

(1) The person is in his or her own dwelling or place of business or on property in which he or she has a possessory or proprietary interest;

(2) The person is a law enforcement officer, correctional officer, or member of the armed forces acting in the course and scope of his or her official duties;

(3) The person is assisting a law enforcement officer, correctional officer, or member of the armed forces acting in the course and scope of his or her official duties pursuant to the direction or request of the law enforcement officer, correctional officer, or member of the armed forces;

(4) The person is carrying a weapon when upon a journey, unless the journey is through a commercial airport when presenting at the security checkpoint in the airport or is in the person's checked baggage and is not a lawfully declared weapon;

2018, when these officers ran into Ward, that statute said that "a person commits the offense of carrying a weapon if he or she possesses a handgun, knife, or club on or about his or her person, in a vehicle occupied by him or her, or otherwise readily available for use with a purpose to attempt to unlawfully employ the handgun, knife, or club as a weapon against a person." ARK. CODE ANN. § 5-73-120(a)

---

(5) The person is a registered commissioned security guard acting in the course and scope of his or her duties;

(6) The person is hunting game with a handgun that may be hunted with a handgun under rules and regulations of the Arkansas State Game and Fish Commission or is en route to or from a hunting area for the purpose of hunting game with a handgun;

(7) The person is a certified law enforcement officer;

(8) The person is in possession of a concealed handgun and has a valid license to carry a concealed handgun under § 5-73-301 et seq., or recognized under § 5-73-321 and is not in a prohibited place as defined by § 5-73-306;

(9) The person is a prosecuting attorney or deputy prosecuting attorney carrying a firearm under § 16-21-147; or

(10) The person is in possession of a handgun and is a retired law enforcement officer with a valid concealed carry authorization issued under federal or state law.

(d) Carrying a weapon is a Class A misdemeanor.

(amended 2019). The statute also provided that "[i]t is permissible to carry a weapon under this section if . . . the person is carrying a weapon when upon a journey . . .", with an inapplicable proviso about airports. ARK. CODE ANN. § 5-73-120(c)(4) (amended 2019). The Arkansas General Assembly defined journey as "travel beyond the county in which a person lives." ARK. CODE ANN. § 5-73-120(b)(3) (amended 2019). This is a statutory refinement of the common law rule. *E.g., Davis v. State*, 45 Ark. 359, 361 (1885).

Based on the undisputed facts, Officer Emberton did not have arguable probable cause to believe that Ward's pistol was related to any criminal activity. There were no facts indicating that Ward possessed his Glock "with a purpose to attempt to unlawfully employ" it against a person. To the contrary, after being pulled over, Ward immediately removed the weapon from his holster, unloaded it, and put it on his dashboard. In the clarity of hindsight, Ward's actions were foolish—removing a magazine and racking a gun during a traffic stop could easily provoke a law enforcement response involving force, deadly or otherwise, and somebody getting hurt. But his foolish actions, considering all the material circumstances, didn't provide an objectively reasonable basis for believing Ward was committing a crime.

Then there's the journey point. Ward was pulled over in Greenbrier, which is in Faulkner County. He lived in Holland, which

is also in Faulkner County. He told Officer Emberton and Chief Earnhart that he was returning from a job in Botkinburg, which is about thirty-seven miles away in Van Buren County. Ward said he was going to meet his children, who were about to get dropped off the school bus at his house. Officer Emberton looked at Ward's driver's license. All these circumstances provided the officers no reason to doubt his story. The statute the officers rely on says clearly that a person can carry a weapon upon a journey, which it defines as travel beyond the county in which a person lives. No question: it covered Ward that day. The officers did not have arguable probable cause of a statutory violation.

Officer Emberton tries to avoid the journey issue by arguing that he did not have a duty to consider statutory defenses in determining probable cause. But being on a journey was not an affirmative defense in May 2018. An earlier version of the statute listed it as a defense, and that's the version of the law Officer Emberton cites in his motion papers. ARK. CODE ANN. § 5-73-120(c) (amended 2013). But the Arkansas General Assembly amended the statute in 2013, reclassifying what had been a list of affirmative defenses into a list of circumstances where it was explicitly permissible to carry a gun. 2013 Ark. Act 746; *see also* Op. Ark. Att'y Gen. No. 64, at 5 (2015).

Officer Emberton violated Ward's Fourth Amendment rights. The question becomes whether qualified immunity shields him from

liability. It does not. An individual's right to be free from unreasonable seizures of his effects is clearly established. U.S. Const. amend. IV; *Robbins*, 984 F.3d at 680. The Fourth Amendment protects a person's pistol. *Lewis*, 864 F.3d at 944-47.

   4.   **Supervisor Liability.** Chief Earnhart didn't seize the gun. But he can be held liable as a supervisor if he was personally involved in the constitutional violation or if his corrective inaction constituted deliberate indifference toward the violation. *Ottman v. City of Independence*, 341 F.3d 751, 761 (8th Cir. 2003). To be deliberately indifferent, a "supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what he might see." *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994) (new info). Though supervisor liability in a § 1983 case is rare, it exists here. Chief Earnhart was personally involved. He was not only present when the gun was seized, he debated Ward about the meaning of "journey" under Arkansas law. The Chief is liable for the Fourth Amendment violation.

   5.   **Conversion Claim Against Officer Emberton.** To prevail on his conversion claim, Ward must show that Officer Emberton wrongfully committed a distinct act of dominion over the Glock, which denied, or was inconsistent with, Ward's rights. *Integrated Direct Marketing, LLC v. May*, 2016 Ark. 281, at 3, 495 S.W.3d 73, 75. Based on the undisputed facts, Ward is entitled to judgment as a matter of law here. Officer Emberton seized the pistol and refused to return it for

approximately three months. He had the requisite intent. *Buck v. Gillham*, 80 Ark. App. 375, 379, 96 S.W.3d 750, 753 (2003). And Arkansas statutory immunity does not shield him from liability for his intentional tort. *Battle v. Harris*, 298 Ark. 241, 245, 766 S.W.2d 431, 433 (1989).

  6. **Unlawful Seizure Under Arkansas Law.** Ward's claim under Article 2, Section 15 of the Arkansas Constitution for unlawful seizure is subject to the same analysis as his Fourth Amendment claim. *Rainey v. Hartness*, 339 Ark. 293, 300, 5 S.W.3d 410, 415 (1999). He is therefore entitled to judgment against Officer Emberton and Chief Earnhart on that claim, too.

  7. **State Law Right To Bear Arms.** The seizure of the pistol did not violate Ward's clearly established right to bear arms under Article 2, Section 5 of the Arkansas Constitution. *See Rodgers v. Knight*, 781 F.3d 932, 941–42 (8th Cir. 2015); *Walters v. Wolf*, 660 F.3d 307, 318 (8th Cir. 2011). Officer Emberton and Chief Earnhart are entitled to qualified immunity on those claims.

  8. **Damages.** Ward is entitled to some compensatory damages. He testified that the Glock was worth $1,200 when it was seized. A day or two later he bought a replacement pistol for $800. He also spent $300 to get a concealed carry permit that he did not want, and felt he did not need, in hopes of getting his Glock returned. When he got the Glock back, it had a quarter-inch crack in the frame.

The gun still functioned, however, and Ward says it has only gotten more valuable. Ward also says he suffered reputational harm due to publicity about his arrest, but is vague on the details.

The Court awards the following compensatory damages. Ward is entitled to the $300 for the unnecessary concealed carry permit he acquired to be able to carry a pistol on his travels. He's not entitled to recover the $800 for the replacement pistol because he still has it. He wouldn't have spent that money in May 2018 for another pistol but for the improper seizure. Some damages are owed. The Court awards $100 to capture the approximately three months of interest at 6% on the $800, plus a bit more to compensate Ward for having to make the forced purchase. *Killam v. Texas Oil & Gas Corp.*, 303 Ark. 547, 556, 798 S.W.2d 419, 424 (1990). He isn't entitled to the $1,200 for the Glock because it was returned. The pistol was damaged in the seizure, but it still functions and Ward's opinion is that it is more valuable now than it was at the time of the seizure. He has offered no evidence of any damage-related reduction in value. So, he recovers nothing on the Glock itself. And the Court awards no damages for Ward's speculative reputational harm. Ward's total compensatory damages are $400.

Ward also seeks punitive damages. Viewing the evidence in the light most favorable to him, the Court grants summary judgment on the punitive damages claim in favor of Officer Emberton and Chief Earnhart. They made a mistake. They violated Ward's clearly

established rights under the Fourth Amendment. They lacked arguable probable cause for believing that Ward was carrying a weapon in violation of Arkansas law. But no reasonable jury could infer malice from their conduct. Their error was objectionably unreasonable; but malice requires more than a bad mistake. *E.g., In re Aircraft Accident at Little Rock, Arkansas on June 1, 1999*, 351 F.3d 874, 883 (8th Cir. 2003). Ward hasn't proven, by clear and convincing evidence, that officers took his pistol "for the purpose of violating his right to the property or for the purpose of causing damage." *City National Bank of Fort Smith v. Goodwin*, 301 Ark. 182, 188, 783 S.W.2d 335, 338 (1990); *see also* AMI (Civil) 2218.

Ward is also entitled to a reasonable attorney's fee and costs. 42 U.S.C. § 1988. Any motion on these issues is due by 30 October 2023.

\* \* \*

The cross motions for summary judgment, *Doc. 23 & 36*, are granted in part and denied in part. Officer Emberton and Chief Earnhart are entitled to qualified immunity on Ward's claims under Article 2, Section 5 of the Arkansas Constitution. Those claims will be dismissed with prejudice, as will be his claim for punitive damages. Ward is entitled to judgment as a matter of law on his remaining claims.

So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

29 September 2023